1

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: 310-405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page.]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN FELDMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALTO NEUROSCIENCE, INC., AMIT ETKIN, NICHOLAS SMITH, PO YU CHEN, CHRISTOPHER NIXON COX, CHRIS DIMITROPOULOS, ANDREW DREYFUS, MICHAEL LIANG, AARON N.D. WEAVER, and GWILL YORK,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Nathan Feldman ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

("SEC") filings, wire and press releases published by and regarding Alto Neuroscience, Inc. ("Alto" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Alto common stock pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about February 2, 2024 (the "IPO" or "Offering"); and/or (b) Alto securities between February 2, 2024 and October 22, 2024, both dates inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Alto operates as a clinical-stage biopharmaceutical company in the U.S.  The Company's product pipeline includes, *inter alia*, ALTO-100, which at the time of the IPO was in a Phase 2b clinical trial for the treatment of patients with major depressive disorder ("MDD").  Also has touted ALTO-100 as "a novel small molecule that has shown evidence of a pro-neurogenesis/neuroplasticity mechanism of action" and has stated that the Company "believe[s] binds a receptor not targeted by other [central nervous system ("CNS")] therapeutics, which would make it first-in-class if approved."

3.      On January 12, 2024, Alto filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on February 1, 2024 (the "Registration Statement").

4.      On February 2, 2024, pursuant to the Registration Statement, Alto's common stock began publicly trading on the New York Stock Exchange ("NYSE") under the ticker symbol "ANRO."

5.      On February 5, 2024, Alto filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, collectively with the Registration Statement, the "Offering Documents").

6.      Pursuant to the Offering Documents, Alto issued 8,040,000 shares of its common stock to the public at the Offering price of $16.00 per share for proceeds of $119,635,200 to the Company after applicable underwriting discounts and commissions, and before expenses.

7.      The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) ALTO-100 was less effective in treating MDD than Defendants had led investors to believe; (ii) accordingly, ALTO-100's clinical, regulatory, and commercial prospects were overstated; (iii) as a result, Alto's business and/or financial prospects were overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

8.      On October 22, 2024, Alto issued a press release announcing topline results from the Phase 2b trial evaluating ALTO-100 as a treatment for MDD.  That press release stated, in relevant part, that "ALTO-100 in patients with [MDD] did not meet its primary endpoint, assessed by a change from baseline in Montgomery-Åsberg Depression Rating Scale (MADRS), compared to placebo."

9.      On this news, Alto's stock price fell $10.17 per share, or 69.99%, to close at $4.36 per share on October 23, 2024.

10.    Analysts were quick to comment on the Company's announcement.  For example, on October 22, 2024, Jeffries cut its price target for Alto to $17 from $33 and stated that ALTO-100's data raises questions around the Company's overall biomarker approach to CNS disorders and psychiatry.

11.    As of the time this Complaint was filed, Alto's common stock continues to trade below the $16.00 per share Offering price, damaging investors.

12.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Alto's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.    The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Alto is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' activities took place within this District.

16.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.     Plaintiff, as set forth in the attached Certification, acquired Alto common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or purchased or otherwise acquired Alto securities at artificially inflated prices during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

18.     Defendant Alto is a Delaware corporation with principal executive offices located at 650 Castro Street, Suite 450, Mountain View, California 94041.  The Company's common stock trades in an efficient market on the NYSE under the ticker symbol "ANRO."

19.     Defendant Amit Etkin ("Etkin") has served as Alto's President, Chief Executive Officer, and Chair of the Company's Board of Directors at all relevant times.  Defendant Etkin signed or authorized the signing of the Registration Statement filed with the SEC.

20.     Defendant Nicholas Smith ("Smith") has served as Alto's Chief Financial Officer at all relevant times.  Defendant Smith also serves as the Company's Chief Business Officer.  Defendant Smith signed or authorized the signing of the Registration Statement filed with the SEC.

21.     Defendants Etkin and Smith are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

22.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of Alto's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of Alto's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Alto, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants

knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

23.    Alto and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

24.    Defendant Po Yu Chen ("Chen") has served as a Director of Alto at all relevant times. Defendant Chen signed or authorized the signing of the Registration Statement filed with the SEC.

25.    Defendant Christopher Nixon Cox ("Cox") has served as a Director of Alto at all relevant times. Defendant Cox signed or authorized the signing of the Registration Statement filed with the SEC.

26.    Defendant Chris Dimitropoulos ("Dimitropoulos") served as a Director of Alto at the time of the IPO. Defendant Dimitropoulos signed or authorized the signing of the Registration Statement filed with the SEC.

27.    Defendant Andrew Dreyfus ("Dreyfus") has served as a Director of Alto at all relevant times. Defendant Dreyfus signed or authorized the signing of the Registration Statement filed with the SEC.

28.    Defendant Michael Liang ("Liang") served as a Director of Alto at the time of the IPO. Defendant Liang signed or authorized the signing of the Registration Statement filed with the SEC.

29.    Defendant Aaron N.D. Weaver ("Weaver") served as a Director of Alto at the time of the IPO. Defendant Weaver signed or authorized the signing of the Registration Statement filed with the SEC.

30.    Defendant Gwill York ("York") has served as a Director of Alto at all relevant times. Defendant York signed or authorized the signing of the Registration Statement filed with the SEC.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

31.    The Exchange Act Individual Defendants and Defendants Chen, Cox, Dimitropoulos, Dreyfus, Liang, Weaver, and York are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

32.    As directors, executive officers and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Alto securities in the IPO for their own benefit and the benefit of Alto.  The Securities Act Individual Defendants were key members of the IPO working group and executives of Alto who pitched investors to purchase the shares sold in the IPO, including in IPO road shows.

33.    Alto and the Securities Act Individual Defendants are sometimes referred to herein collectively as the "Securities Act Defendants".

34.    The Exchange Act Defendants and Securities Act Defendants are sometimes collectively, in whole or in part, referred to herein as the "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

35.    Alto operates as a clinical-stage biopharmaceutical company in the U.S.  The Company's product pipeline includes, *inter alia*, ALTO-100, which at the time of the IPO was in a Phase 2b clinical trial for the treatment of patients with MDD.

36.    On January 12, 2024, Alto filed the Registration Statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on February 1, 2024.

37.    On February 2, 2024, pursuant to the Registration Statement, Alto's common stock began publicly trading on the NYSE under the ticker symbol "ANRO."

7

38.     On February 5, 2024, Alto filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

39.     Pursuant to the Offering Documents, Alto issued 8,040,000 shares of its common stock to the public at the Offering price of $16.00 per share for proceeds of $119,635,200 to the Company after applicable underwriting discounts and commissions, and before expenses.

**Materially False and Misleading Statements Issued in the Offering Documents**

40.     In providing an overview of the Company, the Offering Documents stated, in relevant part:

> *[W]e believe we can help patients avoid the often lengthy process of trying multiple ineffective treatments before finding one to which they respond, potentially helping patients get better faster*. Through insights derived from our scalable and proprietary Precision Psychiatry Platform, or our Platform, which applies rigorous data science and robust analytics to data gathered by neurocognitive assessments, electroencephalography, and wearable devices, we aim to discover brain-based biomarkers to better identify which patients are more likely to respond to our novel product candidates. *Our approach is designed to improve patient outcomes and increase the likelihood of clinical success and commercial impact of our product candidates by using neurobiological profiles to identify more homogeneous patient groups. We build upon and leverage vast data sets of longitudinal clinical and biomarker data from thousands of patients across central nervous system, or CNS, disorders, which we believe serves as a foundation for applying our approach across numerous patient populations*. *Ultimately, if we are successful, we believe our approach can substantially improve upon the traditional, all-comer approach to CNS drug development*.
>
> *       *       *
>
> *Our Platform and differentiated approach aim to disrupt the trial-and-error method that is currently standard practice in CNS drug development and clinical care*. The data we leverage in connection with the development and application of our Platform comes from multiple sources, including proprietary research, commercial licenses, and publicly available databases. Data we have generated through our own clinical trials, combined with various data sets acquired through licenses or research collaborations, amount to approximately 250 terabytes of clinical and biomarker data, which have been used to develop and enhance our methodologies aimed at discovering predictive biomarkers. Our Platform and approach employ modern tools for measuring human neurobiology together with rigorous data science analytics to discover, and prospectively replicate, biomarker signatures. We use these signatures to identify drug responders, or patients that may demonstrate better clinical response to our novel product candidates. *We believe this*

8

*approach has the potential to increase the probability of clinical success by magnifying the impact of each product candidate, thereby yielding a differentiated drug profile*.[1]

41.     Further, in providing an overview of the Company's pipeline, the Offering Documents stated, in relevant part:

ALTO-100 is a novel small molecule **that has shown evidence of a pro-neurogenesis/neuroplasticity mechanism of action, and we believe binds a receptor not targeted by other CNS therapeutics, which would make it first-in-class if approved**.

\*          \*          \*

In January 2023, we announced results from a Phase 2a trial evaluating ALTO-100, in which patients with MDD characterized by impaired cognition responded significantly better to ALTO-100 than patients without objectively defined cognitive impairment. Based on the results from the Phase 2a trial, we advanced ALTO-100 into an ongoing, randomized, double-blind, placebo-controlled Phase 2b clinical trial in 266 patients with MDD characterized by the cognitive biomarker profile.

42.     Finally, in discussing the Company's strategy, the Offering Documents stated, in relevant part:

We are building a leading precision psychiatry company with a mission to redefine neuropsychiatric care by leveraging neurobiology to develop personalized and highly effective treatment options. We intend to accomplish our mission by implementing the following key strategies.

- **Leverage our Platform and proprietary approach to improve patient outcomes and increase the likelihood of clinical success in neuropsychiatric drug development**. Based on a deep understanding of neurobiology and brain-based biomarkers, we designed our Platform and approach to align groups of patients with the appropriate medication in a manner that we believe could readily scale commercially. Our proprietary approach relies on rigorous analytics using patient-derived data to discover, and prospectively replicate, biomarker signatures for likely drug responders. Our approach differs markedly from traditional CNS clinical drug development, which often fails due to, among others, reliance on findings from small early studies, non-replicated post-hoc analyses, lack of biologically driven patient definitions, and absence of knowledge of the effects of a drug on the human brain. As a result, clinical de-risking in traditional CNS clinical drug development typically does not occur until late in development. We believe our Platform and approach can increase the probability of success in our drug development efforts and we will

---

[1] All emphases included herein are added unless otherwise indicated.

continue to leverage our Platform and approach, including our machine learning methodologies and clinical expertise, to advance our pipeline of novel product candidates.

- **Advance ALTO-100 for the treatment of patients with MDD characterized by a neurocognitive biomarker**. ALTO-100 is a novel small molecule that has shown evidence of a pro-neurogenesis/neuroplasticity mechanism of action. We believe ALTO-100 binds a receptor that is not targeted by existing CNS therapeutics, which would make it first-in-class if approved. We estimate approximately 40% of patients with MDD have the poor cognition biomarker that we have demonstrated to be predictive of a better response to treatment with ALTO-100 in our Phase 2a clinical trial. Following prospectively replicated results observed in our Phase 2a trial, we have advanced ALTO-100 into an ongoing double-blinded, placebo-controlled Phase 2b trial in 266 patients with MDD characterized by this neurocognitive biomarker. The Phase 2b trial was initiated in January 2023 and we expect to report topline data from this trial in the second half of 2024. Pending successful data from this trial, we plan to advance ALTO-100 into a Phase 3 program.

43.      The statements referenced in ¶¶ 40-42 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) ALTO-100 was less effective in treating MDD than Defendants had led investors to believe; (ii) accordingly, ALTO-100's clinical, regulatory, and commercial prospects were overstated; (iii) as a result, Alto's business and/or financial prospects were overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### Materially False and Misleading Statements Issued During the Class Period

44.      The Class Period begins on February 2, 2024, when Alto's common stock began publicly trading on the NYSE pursuant to the materially false or misleading statements or omissions in the Offering Documents, as referenced in ¶¶ 40-42, *supra*.

45.     On March 21, 2024, Alto issued a press release announcing its full year 2023 financial results and recent business highlights.  That press release stated, in relevant part:

> "2024 is shaping up to be a transformational year for Alto as we advance our mission of redefining the treatment paradigm for patients with neuropsychiatric disorders," said [Defendant] Etkin[.] "Our lead product candidates, ALTO-100 and ALTO-300, have demonstrated positive Phase 2a results and we remain focused on clinical execution to deliver value to patients and our shareholders. Looking ahead, we are on track to report data from the Phase 2b depression studies of ALTO-100 and ALTO-300 in the second half of 2024 and the first half of 2025, respectively, in biomarker characterized patients."

*     *     *

> ALTO-100, a first-in-class, oral small molecule believed to work through enhancing neural plasticity, is in development in Phase 2b for the treatment of [MDD]. In January 2023, Alto reported positive results from a Phase 2a study in which patients with MDD and a cognitive biomarker signature were identified as more responsive to ALTO-100. This signal was prospectively replicated to predict clinical response in an independent, locked, and blinded data set of patients from the same study.

46.     That same day, Alto filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2023 (the "2023 10-K").  The 2023 10-K contained substantively similar descriptions of the Company, its pipeline, and its strategy, as discussed, *supra*, in ¶¶ 40-42.

47.     Appended to the 2023 10-K as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by Defendants Etkin and Smith, attesting that "[t]he information contained in the [2023 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

48.     On May 14, 2024, Alto issued a press release announcing its first quarter 2024 financial results and recent business highlights.  That press release stated, in relevant part:

> "Our team's commitment to developing personalized therapies for the brain is exemplified by our continued clinical execution and the recent progress across our pipeline," said [Defendant] Etkin[.] "We are proud to have initiated five Phase 2 clinical studies since Alto's inception, and we look forward to reporting results from our depression studies for ALTO-100, ALTO-300, and ALTO-203, over the coming 12 months."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*    *    *

ALTO-100, a first-in-class, oral small molecule believed to work through enhancing neural plasticity, is in development in Phase 2b for the treatment of [MDD].

49.    On July 16, 2024, Alto issued a press release announcing enrollment completion in the Company's Phase 2b Study of ALTO-100 in MDD. The press release stated, in relevant part:

"The completion of enrollment in this study marks an important achievement," said [Defendant] Etkin[.] "We look forward to reporting topline results later this year, which, if positive, will propel us into Phase 3 and ultimately bring us one step closer to realizing the potential of precision psychiatry."

*    *    *

"Major depressive disorder is among the most prevalent CNS conditions and is a leading cause of disability worldwide," said Adam Savitz, M.D., Ph.D., chief medical officer of Alto. "If we are successful, new targeted therapies like ALTO-100 represent the future of psychiatric care. We are pleased with the receptivity to our neurocognitive test. The execution of this study demonstrates the potential for this test to be implemented broadly in clinical practice. We are grateful to the patients in the study, physicians, trial site staff, and partnerships with advocacy organizations for their efforts in helping us to reach this point."

50.    On July 25, 2024, the Company issued a press release entitled "Alto Neuroscience Receives Funding Award from Wellcome Trust to Accelerate Development of ALTO-100 in Bipolar Depression Leveraging Precision Psychiatry Approach." The press release stated, in relevant part:

"Bipolar depression is among the most challenging psychiatric conditions, yet the only available treatments are antipsychotics, which carry limited efficacy and substantial side effects," said [Defendant] Etkin[.] "Bipolar depression is associated with memory, cognitive, and neuroplasticity abnormalities at similar or greater rates than seen in major depression. *Given the pro-neuroplasticity mechanism of ALTO-100, we have an opportunity to address an important subset of patients displaying a similar neurobiological profile*. We are grateful to Wellcome for their commitment to addressing this devastating condition and eagerness to accelerate our late-stage clinical program as we work to develop the first precision treatment for bipolar disorder."

51.    On August 13, 2024, Alto issued a press release announcing the Company's second quarter 2024 financial results and recent business highlights. The press release stated, in relevant part:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

"Over the recent months we achieved several important milestones for our company and for the field of precision psychiatry as a whole," said [Defendant] Etkin[.] "***Completing the enrollment of 301 patients in our Phase 2b study of ALTO-100 represents the first randomized double-blind study to be completed using our neurocognitive battery as a patient selection tool. We are looking forward to completing this study and reporting topline data in October 2024. Additionally, the funding award we received from Wellcome Trust supports our acceleration of the development of ALTO-100 in bipolar depression directly into a Phase 2b study. Bipolar depression has a similar neurobiological profile as that of the patients being evaluated in the MDD study, and the only approved treatments for this condition are antipsychotic medications. Taken together, these two studies of ALTO-100 across diagnoses have the potential to change the historical framework of neuropsychiatric treatment***."

52.     The statements referenced in ¶¶ 44-51 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) ALTO-100 was less effective in treating MDD than Defendants had led investors to believe; (ii) accordingly, ALTO-100's clinical, regulatory, and commercial prospects were overstated; (iii) as a result, Alto's business and/or financial prospects were overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

53.     On October 22, 2024, Alto issued a press release announcing topline results from the Phase 2b trial evaluating ALTO-100 as a treatment for MDD. That press release stated, in relevant part:

Alto [. . .] ***today announced that the Phase 2b study of ALTO-100 in patients with major depressive disorder (MDD) did not meet its primary endpoint, assessed by a change from baseline in Montgomery-Åsberg Depression Rating Scale (MADRS), compared to placebo***. The favorable safety and tolerability profile of ALTO-100 was consistent with previously reported studies.

"We are disheartened by the results from this study as the unmet need in this patient population is immense," said [Defendant] Etkin[.] "While the results are surprising and disappointing, I am proud of our team for conducting a first-of-its-kind precision biomarker-based study in psychiatry. We will move quickly to evaluate the full data set to better understand these findings and incorporate learnings from this large data set across

our platform. We remain committed to our mission of helping patients get better faster by bringing precision medicine to psychiatry, and we expect our strong cash balance to support us through multiple near-term clinical milestones across our pipeline."

Topline results from the Phase 2b study

The randomized, double-blind, placebo-controlled Phase 2b study was designed to evaluate ALTO-100 in adults with MDD, defined by an objective, memory based cognitive biomarker assessed prior to randomization. The primary endpoint was the change from baseline to the end of the 6-week double-blind treatment period on the MADRS, which is the standard regulatory endpoint in depression. The study was conducted across 34 sites in the U.S. and enrolled 301 adults with MDD.

- The biomarker-defined MDD patient group treated with ALTO-100 *did not demonstrate a statistically significant improvement in depressive symptoms compared to placebo*.
- ALTO-100 *did not demonstrate benefit over placebo on the pre-specified key secondary analyses*.

54.    On this news, Alto's stock price fell $10.17 per share, or 69.99%, to close at $4.36 per share on October 23, 2024.

55.    Analysts were quick to comment on the Company's announcement.  For example, on October 22, 2024, Jeffries cut its price target for Alto to $17 from $33 and stated, in relevant part:

Overall Precision Psychiatry Approach Hurt by (-) Phase IIb Depression Results

ANRO stock could slide -50% or more on negative Phase IIb MDD data for oral ALTO-100 (novel BDNF). On one hand, ANRO still has 3+ add'l Phase II readouts in 2025 with different compounds and biomarkers, *but ALTO-100's (-) data raises questions around ANRO's overall biomarker approach to CNS/psychiatry (e.g. tailoring treatments to maximize efficacy). We now assign an overall 0% PoS to ALTO-100 (vs prior 25%), resulting in a PT reduction to $17 (vs prior $33)*.

Big Picture: ANRO is leveraging precision psychiatry (biomarkers) to tailor treatments, maximize efficacy, and ensure study success. The company has 4+ novel drugs for $1B+ blockbuster indications, such as major depression (MDD), hard-to-treat schizophrenia (CIAS), and bipolar depression (BPD). ANRO's strategy is to address a common issue with existing therapies: Mental health disorders are heterogeneous, so patients are bound to respond differently to the same drug. To enrich and define the appropriate MDD/CIAS/BPD subpopulations, ANRO has developed a set of proprietary brain-based biomarkers to identify patients likely to respond to ANRO's drugs in particular.

Investors were mostly on the sidelines though, as prior Phase IIa data for lead drug ALTO-100 was fundamentally based on an open-label design. However, we were more constructive (i.e. 50% confident): (1) The Phase IIa was fairly sizable in nature (N=93), (2) ALTO-100's absolute MADRS efficacy reduction seemed meaningful, (3) The study prospectively validated a proprietary cognitive biomarker unique to ALTO-100, before testing it in **bio+ (cognitively-impaired)** and bio-patients, (4) We saw a strong separation between the bio+ and bio- groups, the latter of which could be viewed as a hypothetical placebo.

**In short, we are wrong about ALTO-100's potential in MDD**: (1) Topline details for the pbo-controlled 6-week Phase IIb study are sparse (N=301) with no quantitative numbers, so we can infer there are no meaningful efficacy signals/trends on MADRS efficacy. For relative context, the prior open-label Phase IIa showed -15.5 in bio+ patients after Week 6 (vs -10.6 for bio- patients). (2) Secondary analyses missed as well. (3) We spoke to mgmt who notes the study was not hurt by a high placebo effect (we are still curious how placebo behaved between bio+/bio- patients), and that the data does support biomarker stratification. (4) Common AEs of headache, nausea and abnormal dreams are similar to placebo, (5) ALTO-100's chances in PTSD and BPD decrease. ***Net-net: We infer the study's failure is driven by a lack of drug effect, rather than mgmt execution error (which may have (+) readacross to other the Phase IIb datasets in 2025).***

56.    As of the time this Complaint was filed, Alto's common stock continues to trade below the $16.00 per share Offering price, damaging investors.

57.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Alto's securities, Plaintiff and other Class members have suffered significant losses and damages.

### **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

58.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Alto common stock in the IPO or purchased Alto common stock thereafter in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO; and/or (b) Alto securities during the Class Period; and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all

relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

59.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Alto securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Alto or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

60.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

61.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Alto;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Alto to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Alto securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

63.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

64.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Alto securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

17

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Alto securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

65.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

66.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

### (Violations of Section 11 of the Securities Act Against the Securities Act Defendants)

67.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

68.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Securities Act Defendants.

69.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

70.     Alto is the registrant for the IPO.  The Securities Act Defendants were responsible for the contents and dissemination of the Offering Documents.

71.     As issuer of the shares, Alto is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

72.    None of the Securities Act Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

73.    By reasons of the conduct herein alleged, each Securities Act Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

74.    Plaintiff acquired Alto shares pursuant and/or traceable to the Offering Documents for the IPO.

75.    Plaintiff and the Class have sustained damages.  The value of Alto securities has declined substantially subsequent to and because of the Securities Act Defendants' violations.

## COUNT II

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

76.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

77.    This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

78.    The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Alto within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Alto to engage in the acts described herein.

79.    The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

80.    By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

1

## COUNT III

2

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

3

4      81.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully set

5    forth herein.

6      82.      This Count is asserted against the Exchange Act Defendants and is based upon Section

7

8    10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

9      83.      During the Class Period, the Exchange Act Defendants engaged in a plan, scheme,

10    conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts,

11    transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and

12    the other members of the Class; made various untrue statements of material facts and omitted to state

13    material facts necessary in order to make the statements made, in light of the circumstances under which

14    they were made, not misleading; and employed devices, schemes and artifices to defraud in connection

15

16    with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period,

17    did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii)

18    artificially inflate and maintain the market price of Alto securities; and (iii) cause Plaintiff and other

19

20    members of the Class to purchase or otherwise acquire Alto securities and options at artificially inflated

21    prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants,

22    and each of them, took the actions set forth herein.

23      84.      Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the

24    Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the

25

26    quarterly and annual reports, SEC filings, press releases and other statements and documents described

27    above, including statements made to securities analysts and the media that were designed to influence the

28    market for Alto securities.  Such reports, filings, releases and statements were materially false and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

misleading in that they failed to disclose material adverse information and misrepresented the truth about Alto's finances and business prospects.

85.    By virtue of their positions at Alto, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants.  Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

86.    Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.  As the senior managers and/or directors of Alto, the Exchange Act Individual Defendants had knowledge of the details of Alto's internal affairs.

87.    The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Alto.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Alto's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Alto securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

concerning Alto's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Alto securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

88.    During the Class Period, Alto securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Alto securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Alto securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Alto securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

89.    By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

90.    As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

2

3

**COUNT IV**

**(Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)**

4        91.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing

5   paragraphs as if fully set forth herein.

6        92.    During the Class Period, the Exchange Act Individual Defendants participated in the

7

8   operation and management of Alto, and conducted and participated, directly and indirectly, in the conduct

9   of Alto's business affairs.   Because of their senior positions, they knew the adverse non-public

10  information about Alto's misstatement of income and expenses and false financial statements.

11       93.    As officers and/or directors of a publicly owned company, the Exchange Act Individual

12

13  Defendants had a duty to disseminate accurate and truthful information with respect to Alto's financial

14  condition and results of operations, and to correct promptly any public statements issued by Alto which

15  had become materially false or misleading.

16       94.    Because of their positions of control and authority as senior officers, the Exchange Act

17

18  Individual Defendants were able to, and did, control the contents of the various reports, press releases

19  and public filings which Alto disseminated in the marketplace during the Class Period concerning Alto's

20  results of operations.   Throughout the Class Period, the Exchange Act Individual Defendants exercised

21  their power and authority to cause Alto to engage in the wrongful acts complained of herein.   The

22  Exchange Act Individual Defendants therefore, were "controlling persons" of Alto within the meaning

23  of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged

24  which artificially inflated the market price of Alto securities.

25       95.    Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person

26

27  of Alto.   By reason of their senior management positions and/or being directors of Alto, each of the

28  Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to

23

cause, Alto to engage in the unlawful acts and conduct complained of herein. Each of the Exchange Act Individual Defendants exercised control over the general operations of Alto and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

96.     By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Alto.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 21, 2025                    Respectfully submitted,

                                        **POMERANTZ LLP**

                                        By: *s/ Jennifer Pafiti*
                                        Jennifer Pafiti (SBN 282790)
                                        1100 Glendon Avenue, 15th Floor
                                        Los Angeles, CA 90024
                                        Telephone: 310-405-7190
                                        jpafiti@pomlaw.com

                                        **POMERANTZ LLP**
                                        Jeremy A. Lieberman

(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

**THE SCHALL FIRM**
Brian Schall
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
brian@schallfirm.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## CERTIFICATION PURSUANT
## <u>TO FEDERAL SECURITIES LAWS</u>

1.    I, Nathan Feldman, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Alto Neuroscience, Inc. ("Alto" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Alto securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Alto common stock pursuant and/or traceable to the Offering Documents issued in connection with the Company's IPO as specified in the Complaint, and/or Alto securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    The attached sheet lists all of my transactions in Alto common stock pursuant and/or traceable to the Offering Documents issued in connection with the Company's IPO as specified in the Complaint, and/or Alto securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

      8.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed** <u>5/20/2025                              </u>
                 **(Date)**

Signed by:

*Nathan Feldman*

1DA26AFF51F04C3...

**Nathan Feldman**

**Alto Neuroscience, Inc. (ANRO)**                                        **Nathan Feldman**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/23/2024 | 500 | $11.8000 |
| Purchase/Acquisition | 6/4/2024 | 288 | $11.3600 |
| Purchase/Acquisition | 6/4/2024 | 2 | $11.2900 |
| Purchase/Acquisition | 6/24/2024 | 680 | $11.1200 |
| Purchase/Acquisition | 6/24/2024 | 333 | $11.0700 |
| Purchase/Acquisition | 6/24/2024 | 1 | $11.0800 |
| Purchase/Acquisition | 6/24/2024 | 0.500 | $11.0200 |
| Purchase/Acquisition | 8/1/2024 | 50 | $9.8800 |
| Purchase/Acquisition | 8/1/2024 | 0.500 | $9.8400 |
| Purchase/Acquisition | 8/5/2024 | 154 | $8.4900 |
| Purchase/Acquisition | 8/6/2024 | 106 | $9.3500 |
| Purchase/Acquisition | 8/16/2024 | 159 | $9.4700 |
| Purchase/Acquisition | 8/16/2024 | 0.620 | $9.5200 |
| Purchase/Acquisition | 8/16/2024 | 0.380 | $9.5300 |
| Purchase/Acquisition | 10/23/2024 | 453 | $5.5100 |
| Purchase/Acquisition | 10/23/2024 | 1 | $5.5000 |
| Purchase/Acquisition | 10/28/2024 | 233 | $4.2800 |
| Purchase/Acquisition | 10/28/2024 | 1 | $4.2400 |
| Purchase/Acquisition | 11/4/2024 | 76 | $3.9100 |
| Purchase/Acquisition | 12/3/2024 | 200 | $4.1600 |
| Purchase/Acquisition | 12/3/2024 | 40 | $4.1600 |
| Purchase/Acquisition | 12/3/2024 | 11 | $4.1600 |
| Purchase/Acquisition | 12/11/2024 | 132 | $3.7500 |
| Purchase/Acquisition | 12/11/2024 | 1 | $3.7600 |
| Purchase/Acquisition | 12/20/2024 | 350 | $3.7000 |
| Purchase/Acquisition | 12/20/2024 | 1 | $3.7100 |
| Purchase/Acquisition | 1/15/2025 | 16 | $4.4700 |
| Purchase/Acquisition | 2/7/2025 | 132 | $3.7500 |
| Purchase/Acquisition | 2/7/2025 | 1 | $3.7600 |
| Purchase/Acquisition | 2/7/2025 | 0.333 | $3.7600 |
| Purchase/Acquisition | 2/14/2025 | 302 | $3.3000 |
| Purchase/Acquisition | 2/14/2025 | 64 | $3.3000 |
| Purchase/Acquisition | 2/14/2025 | 0.667 | $3.2800 |
| Sale | 5/28/2024 | (500) | $12.7700 |
| Sale | 6/10/2024 | (290) | $12.0500 |
| Sale | 2/25/2025 | (3,500) | $2.8605 |