UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN FELDMAN,<br><br>Plaintiff,<br><br>v.<br><br>ALTO NEUROSCIENCE, INC., et al.,<br><br>Defendants. | Case No. 25-cv-06105-NW<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Re: ECF Nos. 21, 23 |

This is a securities putative class action brought against Alto Neuroscience, Inc. and its directors (collectively "Alto"). Before the Court are two motions to serve as lead plaintiffs and lead counsel, the first from Special Situations Cayman Fund, L.P., Special Situations Fund III QP, L.P., and Special Situations Life Sciences Fund, L.P. (collectively, the "Special Situations Funds" or "SSF") and the second from Eileen Beiter and Nathan Feldman (the "Individuals"). Having considered the parties' briefs and the relevant legal authority, and concluding that oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the hearing set for December 3, 2025. For the reasons stated below, the Court GRANTS SSF's motion and DENIES the Individuals' motion.

**I.   BACKGROUND**

This action alleges that Alto, a clinical-stage biopharmaceutical company, made false and misleading statements by and through its directors in connection with the company's IPO in February 2024. When information came to light in November 2024 related to the alleged misrepresentations, Alto's stock price plummeted more than 70%.

On July 21, 2025, Plaintiff Nathan Feldman filed the instant Complaint, asserting claims for relief under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C.

§§ 78j(b) and 78t(a). Compl. ¶¶ 64–71.  That same day, counsel for Plaintiff published a notice informing investors of the pendency of this action and of their right to seek appointment as lead plaintiff within sixty days.  On September 19, 2025, four class members timely filed motions to serve as lead plaintiff.  ECF Nos. 17, 21, 23, 24.  Since then, two movants withdrew their motions, *see* ECF Nos. 32, 33, leaving only SSF and the Individuals as candidates for lead plaintiff.

## II.     LEGAL STANDARD

### A.     Lead Plaintiff

Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, governs appointment of lead plaintiffs in all private securities class actions.  *See* 15 U.S.C. §§ 77z-1(a)(3), 78u-4(a)(3).  The district court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," also referred to as the "most adequate plaintiff."  §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i).

The PSLRA "provides a simple three-step process for identifying the lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  At the first step, the pendency of the first-filed action, the claims made, and the purported class period must be publicized in a "widely circulated national business-oriented publication or wire service." *Id.* (internal quotation marks and citation omitted).  Second, the court must identify the presumptive lead plaintiff, *i.e.*, "the movant with the largest financial interest who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (internal quotation marks and citation omitted).  "At step three, the process turns adversarial," *Mersho*, 6 F.4th at 899, and other hopeful plaintiffs may attempt to "rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730.  "If the presumption is not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff." *Mersho*, 6 F.4th at 899.

### B.     Lead Counsel

Under the PSLRA, the lead plaintiff has the right, subject to court approval, to select and retain counsel to represent the class. *See Cohen v. U.S. Dist. Ct.*, 586 F.3d 703, 711 (9th Cir.

2009). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712.

### III. DISCUSSION

#### A. Lead Plaintiff

The Court finds, and no party disputes, that publication of notice of this lawsuit was completed within the required timeframe. Further, the Individuals concede that SSF's alleged financial loss—more than $5 million—far outweighs the Individuals' combined loss of approximately $28,000. The only remaining issue, then, is whether SSF satisfies the typicality and adequacy requirements required under Rule 23. The Individuals claim that SSF fails both conditions; SSF disagrees.

The Individuals' argue that SSF is an atypical, inadequate lead plaintiff for two reasons: (1) the term "Special Situations," which is part of the title of each fund in SSF, indicates that SSF handles special investments that render SSF unlike most other investors; and (2) SSF is subject to unique defenses because it had facially contradictory trading strategies amongst its three funds on a single day. According to the Individuals, these "facts" demonstrate that SSF did not rely on the misstatements at issue in this action, making them unsuitable for appointment as lead plaintiff.

The Individuals' arguments offer only speculation. "The PSLRA requires 'proof' to overcome the presumption entitling the plaintiff with the largest financial interest in the litigation to appointment as lead plaintiff." *Schlaegel v. Palo Alto Networks Inc.*, 2024 WL 3747410, at *4 (N.D. Cal. Aug. 9, 2024) (citations omitted). Instead of providing proof, the Individuals merely pose rhetorical questions regarding SSF's suitability as lead plaintiff, presumably hoping the Court will assume that if SSF is ever called to answer these questions, SSF will have disqualifying, rather than innocuous, answers. *See e.g.,* Ind. Opp'n at 9, ("[W]hat 'special situation' had [the SSF] portfolio manager identified that informed [SSF's] Class Period transactions?"), 13 ("What will the Funds' portfolio manager say at his deposition when he is inevitably asked to explain his contradictory trading on behalf of the different funds?"). The Court will not engage in this speculation, which "is insufficient to rebut the presumption" that the presumptive lead plaintiff "satisfies the adequacy and typicality requirements." *Cook v. Atossa Genetics, Inc.*, No. C13-

3

1836RSM, 2014 WL 585870, at *5 (W.D. Wash. Feb. 14, 2014).

While the Court has noticed that SSF has made errors in its papers, including a request for consolidation of supposed "Related Actions" where none exist, *see* SSF Mot. at 10-11 (indicating in present tense that related actions "here" have common questions of law and fact), those errors do not "give the Court pause about appointing" SSF as lead plaintiff as the Individuals urge. Courts generally do not find that immaterial or clerical mistakes render a movant inadequate without more. *See, e.g.*, *In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at *6 (N.D. Cal. Jan. 25, 2017) (finding "minor or inadvertent mistakes" did not prevent appointment as lead plaintiff); *Banerjee v. Avinger, Inc.*, No. 17-CV-03400-CW, 2017 WL 4552063, at *3 (N.D. Cal. Oct. 11, 2017) (same). In the Court's view, none of the errors rise to the level of being material, even if those errors demonstrate SSF could have acted more carefully in crafting their motion.

Accordingly, the Court finds SSF to be an adequate lead plaintiff. The Court GRANTS SSF's motion.

### B. Lead Counsel

The PSLRA requires the lead plaintiff shall, subject to court approval, select and retain counsel to represent the putative class. 15 U.S.C. § 78U-4(a)(3)(B)(v). "A court may only override the lead plaintiff's choice of counsel where the court believes it necessary to protect the interests of the class." *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC RNBX, 2006 WL 6886020, at *11 (C.D. Cal. May 2, 2006) (internal quotation marks omitted); *see also Cavanaugh*, 306 F.3d at 374 ("While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff."). SSF has selected Rolnick Kramer Sadighi LLP ("RKS") to serve as its counsel. The firm has extensive experience litigating securities class actions and has been appointed lead counsel or co-lead counsel in several such actions. *See, e.g.*, *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, Case No. 2:14-cv-02571 (E.D. Cal.). The Individuals do not

\\

\\

dispute that RKS is qualified to prosecute this action.  Therefore, the Court appoints RKS as lead counsel.

**IT IS SO ORDERED.**

Dated: December 1, 2025

_____
Noël Wise
United States District Judge